OPINION OF THE COURT
Frank J. LaBuda, J.
Petitioner filed an order to show cause seeking CPLR article 78 review of respondents’ denial of his participation in a temporary release program, also known as work release.* Respondents have submitted an answer and return. Petitioner filed a reply.
In November 2009, petitioner was convicted by guilty plea to numerous counts of grand larceny, offering a false instrument, and scheme to defraud. Petitioner, an attorney, stole client funds held in his escrow account; he served as a court-appointed guardian to the majority of his victims, most of whom were seriously mentally and/or physically disabled. In May of 2010 Supreme Court, New York County (Zweibel, J.), sentenced petitioner to an indeterminate term of 5 to 15 years in state prison and ordered him to pay approximately $2.8 million in restitution.
Petitioner is housed at Livingston Correctional Facility. During his incarceration, it is undisputed that petitioner has completed all programmatic requirements of the Department of Corrections and Community Supervision (DOCCS), including the alcohol and substance abuse treatment (ASAT) program. He has no disciplinary history while in state custody, and no criminal history other than the instant offenses. He scored 46 on the work release application, a very high score and one which makes him eligible for work release. According to petitioner, and undisputed by respondents, when he became aware of the investigation into his crimes, he surrendered himself to the District Attorney’s office, without counsel, and admitted his guilt. Petitioner has been disbarred and therefore, upon his release, will not be able to work in the legal profession; therefore, he must learn a new trade prior to his release from prison or he will leave the prison system with no new skills.
By decision dated December 29, 2011, the Temporary Release Committee (TRC) denied petitioner’s application for work *860 release. The denial was based on the nature of his instant offenses, which involved dishonesty to the court and theft of millions of dollars from incapacitated, disabled and vulnerable clients while serving as a court-appointed guardian. Petitioner timely administratively appealed the TRC’s decision to the Central Office, which by decision dated July 6, 2012, affirmed the TRC’s decision. The administrative appeal decision references petitioner’s theft of millions of dollars of incapacitated clients’ funds and the serious nature of the instant offenses as being the basis upon which respondent denied the work release application. Respondent indicated petitioner could reapply in December 2013.
Participation in a temporary release program or work release is not a right; it is a privilege granted at the discretion of DOCCS personnel. (Correction Law § 855 [9]; Matter of Wiggins v Joy, 46 AD3d 1035 [3d Dept 2007]; Matter of Abascal v Maczek, 19 AD3d 913 [3d Dept 2005], lv denied 5 NY3d 713 [2005].) Judicial review of a denial of participation in work release or temporary release is limited to whether the denial “violated any positive statutory requirement or denied a constitutional right of the inmate and whether [it] is affected by irrationality bordering on impropriety.” (Matter of Gonzalez v Wilson, 106 AD2d 386, 386-387 [2d Dept 1984]; Wiggins v Joy, 46 AD3d at 1036.) A TRC’s reliance on the extent and severity of an inmate’s criminal history and instant offense is not irrational and well within accepted guidelines. (See Matter of Lapetina v Fischer, 76 AD3d 722 [3d Dept 2010].)
The TRC must consider “any factors, besides the items in the point system, which, in their best judgment, they find significant.” (7 NYCRR 1900.4 [1] [1], [2].) The TRC must consider whether an inmate’s participation in a temporary release program will be “consistent with the safety of the community and the welfare of the applicant.” (Correction Law § 855 [4].) Most important, the TRC is under no affirmative obligation to grant an application for temporary release because the inmate scored high on the point system; the TRC must find an applicant “suitable” for the program. (7 NYCRR 1900.4.) The fact that an inmate’s crime is not excluded from eligibility under Correction Law § 851 (2) and Executive Order (Spitzer) No. 9 (9 NYCRR 6.9) does not mean the TRC cannot deny an application. (Matter of Crispino v Goord, 30 AD3d 874 [3d Dept 2006]; see also Matter of Madill v Joy, 2008 NY Slip Op 33430[U] [Sup Ct, Albany County 2008].)
An analysis of whether a denial is arbitrary and capricious, however, does not begin and end with questioning whether a *861 denial was based on allowable factors; while the TRC and Central Office have considerable discretion and may indicate they have considered all of the required criteria, a decision to deny work release must make sense in light of consideration of those criteria. In addition, it is necessary that the decision to deny work release to an otherwise qualified inmate should be sufficiently detailed so as to inform the inmate of why his instant offenses cause him to be ineligible for temporary release. (Matter of Ortiz v Wilson, 113 Misc 2d 226, 227 [Sup Ct, Albany County 1981]; Matter of May v Hongisto, 99 Misc 2d 918, 920 [Sup Ct, Orleans County 1979].)
In Matter of Wattman v Joy (304 AD2d 996 [3d Dept 2003]), the petitioner, an attorney, was convicted of grand larceny in the second degree arising out of his theft of over $4.7 million in escrow funds belonging to his clients. The TRC determined the inmate was a threat to public safety given the nature of his crimes. In dismissing the inmate’s article 78 petition, the appellate court stated, “the nature of [petitioner’s] crime raised serious doubts as to whether petitioner was sufficiently trustworthy to take part in a temporary release program and whether his release posed a threat to community safety.” (Id. at 997.) Similarly, in Matter of Crispino v Goord (30 AD3d 874 [2006]), an attorney who was convicted of multiple counts of grand larceny, criminal possession of a forged instrument, and other crimes applied for temporary release and the TRC denied his application. In upholding the denial, the Court noted that although the inmate’s previous application for participation in a temporary work release program was granted, that approval had no bearing on the inmate’s present application for a furlough, in which he would be able to leave the prison for up to 14 days, rather than the limited period of 14 hours for the work release. (Id.)
Although in both of the aforementioned cases the inmates were attorneys and their crimes were very similar to petitioner’s, that is where the similarity ends.
In the instant matter, the TRC’s denial of temporary release states:
“Your application for temporary release work release has been denied by the Temporary Release Committee for the following reason(s):
“I/O Nature
“Explanation: You not only violated the trust of the courts, but you also ran rampant over the rights *862 and the trust of those deemed too helpless to care for themselves. Your crime was great, planned and extensive in scope and damage inflicted.”
The administrative appellate decision of the Central Office states:
“After reviewing all factors in this case, both positive and negative, the decision has been made to affirm the TRC decision in this case.
“Reasons: I/O Nature
“Comments: Your instant offense involved you over a period of almost 7 years stealing approximately 4 million [sic] dollars from mentally and physically incapacitated victims while you were working as an attorney for them. The serious nature of your instant offense renders you unsuitable for work release.”
Neither of these explanations indicate why the serious nature of the instant offenses renders petitioner ineligible for work release, nor does either decision indicate in any manner that petitioner is a threat to public safety. The rules state in pertinent part,
“Inmates should be denied temporary release if their presence in the community or in minimum security institutions would pose an unwarranted threat to their own or public safety, if public reaction is such that the inmate’s successful participation in the program would be made difficult and public acceptance of the temporary release program would be jeopardized, or if there is substantial evidence to indicate the inmate cannot successfully complete his requested temporary release program.” (7 NYCRR 1900.4 [1] [4].)
There is no dispute that petitioner’s crimes and the ongoing nature of his criminal activity were appalling; that petitioner victimized mentally and physically handicapped clients he was court ordered to represent and protect is reprehensible. Petitioner is well aware of his criminal conduct, as is the court, however, and the nature of his crimes will not change. There is nothing in either decision, above, however, to inform petitioner or the court as to why the serious nature of the instant offenses renders petitioner unsuitable for work release; the decisions are conclusory, and nothing more. (Ortiz v Wilson.) Simply reiterating the shocking and upsetting nature of the instant offenses is insufficient to satisfy the statutory requirements and rules for *863 rendering a denial of work release (Correction Law § 855; 7 NYCRR 1900.4 [1] [3], [4]).
This case is distinguishable from Wallman v Joy and Crispino v Goord, in which the TRC specifically determined that the serious nature of the offenses made the inmates a threat to public safety if granted work release or a furlough. It is unknown, however, from the language of the decisions quoted above how the nature of petitioner’s crimes makes him unfit for temporary work release. There is no indication that temporary work release will pose a risk to petitioner or the public safety, that petitioner is unlikely to succeed in work release, or that his participation in work release will result in public protest, thereby jeopardizing his chances of succeeding in work release. (7 NYCRR 1900.4 [1] [4].) Therefore, the court finds that the determination to deny petitioner’s application for temporary work release violated the statutory requirement to state on what basis said denial rests.
Based on the foregoing, it is ordered that the within article 78 petition is granted and this matter is remanded to respondents for reconsideration, and if denied, for additional statements as to the reasons supporting their final disposition, in accordance with this decision and order; and it is further ordered that respondents shall reconsider petitioner’s application within 30 days of entry of this decision and order.

 Because petitioner failed to raise any procedural errors in his administrative appeal, those issues are not preserved for review and will not be considered by this court. (CPLR 7801.)